CHARLES U. MILLER v. J. T. GREEN and J. T. GREEN LUMBER COMPANY.

(Filed 2 June, 1922.)

**1. Contracts—Written Instruments—Interpretation—Intent.**

The intent of the parties is the proper guide in the interpretation of written contracts, ordinarily ascertained from the words employed therein, when not in contravention of other legal principles controlling in its correct interpretation.

**2. Same—Ambiguity—Parol Evidence.**

Where the intention of the parties to a written contract has been clearly expressed, it may not be contradicted by parol evidence, for therefrom the meaning of the contract must be deduced; but where a latent ambiguity as to such intent arises from the language employed not being clear and unequivocal, the preliminary negotiations and surrounding circumstances may be shown and considered in determining the intent of the parties.

**3. Same—Extraneous Facts.**

In the interpretation of a written contract a latent ambiguity may arise where the language therein used is. plain, but the application of the words employed is found impracticable by reason of extraneous facts which should be considered in ascertaining what the parties actually intended.

**4. Same — Consignment — Principal and Agent—Questions for Jury— Trials—Instructions.**

The defendant, a dealer in lumber, had orders therefor from foreign customers, and in turn contracted with the plaintiff to supply it at a certain price per thousand feet, to be reconsigned to the defendant's customers, upon express provision that upon payment by the consignee the defendant should receive $10 for each thousand feet, "terms of reconsignment 80 per cent draft with bill of lading; balance upon arrival of goods": *Held*, the language of the written contract was ambiguous as to whether the contract was one of consignment or a direct sale to the defendant, in plaintiff's action to recover the purchase price, leaving for the determination of the jury, under the evidence and proper instructions from the court, whether the defendant was the agent or vendee of the plaintiff.

APPEAL by defendant from *Brock, J.*, at January Term, 1922, of HAYWOOD.

Civil action, tried on 21 April, 1920, the defendants and the Kroeler Manufacturing Company made the following contract:

J. T. GREEN LUMBER COMPANY, Tryon, N. C.
KROELER MANUFACTURING COMPANY, Naperville, Ill.

Shipping information given from Naperville 80% draft attached. At once. J. E. KOCHA.

We agree to sell and ship to Kroeler Manufacturing Company, of Naperville, Ill., oak lumber, all contents of logs that will make No. 2 common and better, thickness 4/4, 5/4, and 8/4.

Amount this year approximately 200 thousand feet at $90 per thousand, f. o. b. Tryon, N. C., each thickness to be separate in car.

National Hardwood Manufacturing Association. Inspection accepted to both parties.

[SEAL.]                    J. T. GREEN LUMBER COMPANY.
                          J. T. GREEN.
[SEAL.]                    KROELER MANUFACTURING COMPANY,
                                    By J. E. Kocha.

On 8 October, 1920, the plaintiff and the defendants contracted as follows:

"This contract, made this 9 October, 1920, by and between the J. T. Green Lumber Company, Tryon, N. C., and C. U. Miller, of Waynesville, N. C.

"Witnesseth, that the said C. U. Miller agrees to ship to said Green Lumber Company, at Tryon, N. C., within the next seventy days, approximately 125,000 feet of oak lumber; same to be the full contents of all logs that will make No. 3 common and better.

"Said C. U. Miller agrees to pay one-half freight charges on lumber from shipping point to Tryon, N. C.

"It is further agreed that all shipments must be accompanied by a National Hardwood Inspector's tally sheet.

"All lumber received from said C. U. Miller is to be reconsigned by Green Lumber Company from Tryon, N. C., to customers in Illinois of said Green Lumber Company, on contract dated 21 April, 1920, at $90 per M., f. o. b. Tryon, N. C.

"Upon payment of invoice by consignee in Illinois, said Green Lumber Company is to receive $10 for each thousand feet. Terms of reconsignment, 80 per cent draft with bill of lading; balance upon arrival of goods."

Plaintiff alleged that defendants agreed to buy 125,000 feet of lumber and pay plaintiff therefor $80 per thousand, and that plaintiff shipped three cars of lumber for which the defendants were indebted to him in the sum of $2,737.76. The written contract of 8 October was admitted, but the parties differed as to its construction. The plaintiff contended that it was a contract of sale, and the defendant that it was a consignment. His Honor instructed the jury that it was a contract of sale to the defendants. The issues were answered in favor of plaintiff. Defendants excepted and appealed.

*J. W. Ferguson and Morgan & Ward for plaintiff.*
*Smith & Arledge and W. J. Hannah for defendants.*

ADAMS, J.  Where it can be ascertained and followed without contravening legal principles, the intention of the parties is ordinarily accepted as the proper guide in the interpretation of contracts.  If the contract is ambiguous words cannot be supplied which import an intention not expressed when the contract is made, for then the intention of the parties is to be deduced from the language employed; but if there is a latent ambiguity—if the contract is not clear and unequivocal—preliminary negotiations and surrounding circumstances may be considered for the purpose of determining what the parties intended—*i. e.,* for the purpose of ascertaining in what sense they used the ambiguous language, but not for the purpose of contradicting the written contract or varying its terms.  A latent ambiguity may arise where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable.  *Hand v. Hoffman,* 8 N. J. L., 71; 6 R. C. L., 839, 841; Page on Contracts, sec. 2060 *et seq.; McMahan v. R. R.,* 170 N. C., 459; *Simmons v. Groom,* 167 N. C., 275; *Merriam v. U. S.,* 107 U. S., 441.  Neither the plaintiff's agreement "to ship" nor the defendants' agreement to "reconsign" the lumber *ex vi termini* determines the nature of their contract.  "In all cases it is held that the relation of the parties as principal and agent, or as vendor and vendee, is determined by the nature of the transaction, and not by the name which they give it, and the use of the words 'agent,' 'commissions,' etc., is of little significance.  If the goods are delivered to the 'consignee' under such circumstances as to confer upon him absolute dominion over them, and he becomes bound to pay a stipulated price for them at a certain time, or upon the happening of any future event, the transaction amounts to a sale and delivery, and the title passes to him." *Buffum v. Descher,* 96 N. W. R., 352.

The last paragraph of the written agreement is susceptible of explanation by parol.  Indeed, such explanation seems to be necessary.  There is ambiguity as to the source from which the plaintiff was to derive his pay.  It does not definitely appear, but it may be assumed that the bills of lading were sent by the defendant to the Kroeler Manufacturing Company, and that to each bill was attached a draft for 80 per cent of the contract price.  The defendant was to receive $10 for every thousand feet.  What was the intention of the parties as to the disposition of the remainder?  Was the Kroeler Company to pay it to the plaintiff, or to the defendant?  If to the plaintiff, was the Kroeler Company acting as purchaser from him or as the agent of the defendant?  If to the defendant, as perhaps may be inferred, did the defendant receive pay-

ment as the seller of the lumber, or as the agent or broker of the plaintiff? The answer depends on the intention. As we read the record the evidence relating to these questions is apparently conflicting, and we think that an admission by the parties or a determination of the facts by the jury, is essential to a proper construction of the contract. When such intention with respect to the payments is ascertained, the question whether the contract is a consignment or a sale to the defendants may easily be determined. If no admission is made, it will be necessary for the jury to find the facts from the evidence and apply the court's instruction as to the law in finding ultimately whether the defendant was the agent or the vendee of the plaintiff.

For the reasons assigned, there must be a

New trial.