JEFFERSON-PILOT LIFE INSURANCE COMPANY, PLAINTIFF v. SMITH HELMS MULLISS & MOORE, A NORTH CAROLINA PARTNERSHIP, DEFENDANT AND THIRD PARTY PLAINTIFF v. NORTH GREENE ASSOCIATES LIMITED PARTNERSHIP, A NORTH CAROLINA LIMITED PARTNERSHIP, THIRD PARTY DEFENDANT

No. 9118SC1289

(Filed 4 May 1993)

1. **Evidence and Witnesses § 1994 (NCI4th)— lease termination agreement—parol evidence rule—extrinsic evidence admissible**

    The trial court did not err in an action arising from the termination of a lease by considering extrinsic evidence of the parties' intent in entering into a lease termination agreement where the words of the agreement seem clear and unambiguous, but their meaning is less than certain when viewed in the context of all the surrounding circumstances.

    **Am Jur 2d, Contracts §§ 260-263.**

2. **Landlord and Tenant § 35 (NCI4th)— lease—agreement to terminate—action for expenses under lease—question of parties' intent—summary judgment not appropriate**

    Summary judgment should not have been granted for plaintiff in an action arising from the termination of a lease where the lease provided that defendant was to pay a portion of plaintiff's increased operating expenses during the lease, an agreement was subsequently signed to terminate the lease, defendant presented evidence that the obligation to pay those expenses was eliminated by the termination agreement, and plaintiff presented facts showing that the expenses were never considered and never intended to be released in the termination agreement. Summary judgment should not have been granted because the question of the parties' intent exists and extrinsic evidence is required to determine that intent.

    **Am Jur 2d, Landlord and Tenant § 1013; Summary Judgment § 27.**

Appeal by defendant and third party defendant from judgment entered 24 October 1991 by Judge Peter M. McHugh in Guilford County Superior Court. Heard in the Court of Appeals on 7 December 1992.

JEFFERSON-PILOT LIFE INS. CO. v. SMITH HELMS MULLISS & MOORE

[110 N.C. App. 78 (1993)]

On 17 December 1975, plaintiff and defendant entered into a lease whereby defendant leased space from plaintiff in the NCNB Building in Greensboro for a term of five years, with the option to renew for three consecutive five year periods (the 1977 lease). In addition to normal monthly rent payments, defendant was to pay a portion of plaintiff's increased operating expenses. The increased operating expenses were calculated using the first year of the lease as a base year and subtracting that base amount from each subsequent year's operating expenses. The amount of operating expenses payable by defendant was proportional to the amount of space occupied by defendant in the building. Defendant did not pay expenses for the current year as those expenses were incurred. Rather, plaintiff would permit operating expenses to accrue for two years before charging defendant. At the end of every two year period, plaintiff would calculate its operating expenses and determine the proportionate share owed by defendant. That amount would be divided and paid over the next two years with the monthly rent. This process continued for as long as defendant leased from plaintiff.

The lease also provided that at the end of the term, and apparently after termination for any reason, plaintiff would provide defendant with a statement setting forth the total amount of defendant's proportionate share of plaintiff's increased operating expenses for the period of time defendant actually occupied the premises following the last adjustment. Plaintiff could deliver the statement to defendant on or before the lease anniversary date of the year following the end of the term. Thereafter, defendant would have fifteen days to pay the amount due in lump sum.

Defendant renewed the lease with plaintiff several times and at the time this suit arose, was bound to continue under the lease until February 1992. On 7 July 1988, defendant entered into a lease agreement with third party defendant North Greene Associates (North Greene) for the leasing by defendant of space in the First Union Tower in Greensboro. This new lease was to commence in February 1990. As part of the inducement to enter into the new lease, North Greene agreed to pay defendant for rent due under the 1977 lease beginning after the commencement date of the new lease.

Subsequently, in an effort to reduce costs, North Greene negotiated an agreement with plaintiff to terminate the 1977 lease

for one hundred thousand dollars (the lease termination agreement). That agreement was entered into on 19 September 1989. As part of the lease termination agreement, the parties entered into a release which reads in pertinent part:

> Termination of the J-P Leases. Effective on the Termination Date (defined below), the J-P Leases between Jeff-Pilot and Smith Helms shall cease and terminate . . . . Jeff-Pilot and Smith Helms shall have no rights or obligations to each other under the J-P Leases that arise or accrue on or after the Termination Date, and Jeff-Pilot and Smith Helms do hereby release and discharge each other from any and all duties and obligations that they otherwise would have been required to perform under the J-P Leases on or after the Termination Date.

The termination date was defined as "the date that Smith Helms vacates the J-P and NCNB Premises and completes occupancy of its new office space in the First Union Tower."

Defendant moved out of the NCNB building and began occupying the First Union Tower in February 1990. In January 1990, prior to the move/termination date, plaintiff sent defendant a letter demanding payment of $231,364.08 as additional rent purportedly owed by defendant primarily for increased operating expenses for the years 1988 and 1989. Because defendant believed the lease termination agreement eliminated any obligation to pay this amount, it refused to pay. Plaintiff filed suit for payment. There was also a dispute over which date in February 1990 defendant vacated the NCNB premises and, accordingly, what amount of rent was due for that month, so plaintiff joined that dispute in its action for damages. On 31 January 1991, plaintiff mailed a letter to defendant demanding payment for defendant's share of increased operating expenses for January and February 1990. On 25 June 1991, plaintiff filed supplemental pleadings seeking payment of the increased operating expenses for January and February 1990.

Defendant pleaded release as a defense and filed a third party complaint against North Greene claiming that North Greene must indemnify defendant for any amount owed to plaintiff. Plaintiff moved for partial summary judgment. The trial judge granted plaintiff's motion on the claim for 1988 and 1989 operating expenses and reserved for trial only the issue of the date defendant vacated the NCNB building and the corresponding issue of the amount of rent due for February 1990. Claims for costs, interest and at-

torney's fees were deferred. The judge also granted defendant's motion for summary judgment on its claim for indemnity against North Greene. In order to allow defendant and North Greene to appeal immediately, the parties entered into a compromise agreement and stipulation which established the amount of damages which were due to plaintiff in addition to those determined by the order granting summary judgment. Based upon the agreement and order, the superior court judge entered judgment. From this judgment defendant and third party defendant appeal.

> *Elrod & Lawing, P.A., by Frederick K. Sharpless, for plaintiff appellee.*

> *Bell, Davis & Pitt, by William K. Davis, for defendant and third party plaintiff appellant.*

> *Adams, Kleemeier, Hagan Hannah & Fouts, by Daniel W. Fouts, for third party defendant appellant.*

> *Troutman, Sanders Lockerman & Ashmore, by Robert W. Webb, Jr., for third party defendant appellant.*

ARNOLD, Chief Judge.

Apparently there is no dispute over the calculation of the increased operating expenses nor over defendant's liability for those costs under the 1977 lease. Instead, the issue raised by appellants' assignment of error is did the lease termination agreement, specifically the release language, eliminate defendant's obligation to pay the increased operating expenses. Therefore, the decision in this case boils down to a matter of contract interpretation. Appellants contend that the plain language of the release releases them from any obligation to pay the increased operating expenses, and that the trial court erred by considering parol evidence of the parties' intent. In the alternative, appellants argue that any ambiguity in the release merely raises a question of fact for the jury.

[1] We address the parol evidence problem first. If there is a latent ambiguity in the contract, preliminary negotiations and surrounding circumstances may be used to determine what the parties intended. *Miller v. Green*, 183 N.C. 652, 654, 112 S.E. 417, 417-18 (1922). "A latent ambiguity may arise where the words of a written agreement are plain, but by reason of extraneous facts the definite and certain application of those words is found impracticable." *Id.* at 654, 112 S.E. at 418. Although the words of the agreement

at hand seem clear and unambiguous, their meaning is less than certain when viewed in the context of all the surrounding circumstances. It is unclear whether the release was intended to eliminate rent and expense obligations only for 1990 through 1992, or to absolve defendant of its obligation for 1988 and 1989 as well. In light of this ambiguity, the trial court did not err in considering extrinsic evidence regarding the parties' intent.

[2]   The next question is did the trial court err in granting summary judgment for plaintiff, which resulted in the judgment establishing defendant's liability for the 1988 and 1989 increased operating expenses sought by plaintiff. Summary judgment is proper only where there is no genuine issue as to any material fact. In North Carolina it is well settled that "[w]henever a court is called upon to interpret a contract its primary purpose is to ascertain the intention of the parties. . . ." *Cleland v. The Children's Home, Inc.*, 64 N.C. App. 153, 156, 306 S.E.2d 587, 589 (1983) (citation omitted). If the agreement is ambiguous and the intention is unclear, interpretation of the contract is for the jury. *Id.* "[I]f the writing itself leaves it doubtful or uncertain as to what the agreement was, parol evidence is competent . . . to show and make certain what was the real agreement between the parties; and in such a case what was meant, is for the jury, under proper instructions from the court." *Root v. Allstate Ins. Co.*, 272 N.C. 580, 590, 158 S.E.2d 829, 837 (1968).

Defendant's and North Greene's forecast of evidence tends to show that the increased operating expenses may have accrued after the termination date of the 1977 lease, depending on the interpretation of the 1977 lease where those increased operating expenses are charged to defendant, and that the obligation to pay increased operating expenses was eliminated by the lease termination agreement. Plaintiff on the other hand, presented facts showing that the expenses sought by plaintiff were *never considered* and *never intended* to be released in the lease termination agreement. "Ambiguities in contracts are to be resolved by the jury upon consideration of 'the expressions used, the subject matter, the end in view, the purpose sought, and the situation of the parties at the time.'" *Cleland*, 64 N.C. App. at 157, 306 S.E.2d at 590. Because the question of the parties' intent exists, and extrinsic evidence is required to determine that intent, summary judgment should not have been granted. Therefore the judgment of the trial

WOODARD v. LOCAL GOVERNMENTAL EMPLOYEES' RETIREMENT SYS.

[110 N.C. App. 83 (1993)]

court is reversed, and the case is remanded for trial on the issue of the parties' intent as to the agreement to terminate leases.

Reversed and remanded.

Judges JOHNSON and ORR concur.