ALCHEMY COMMUNICATIONS CORP. AND ALCHEMY COMMUNICATIONS LIMITED
    PARTNERSHIP #1, PLAINTIFFS v. PRESTON DEVELOPMENT COMPANY, AND
    FLORA DEVELOPMENT, LLC, DEFENDANTS

No. COA01-75

(Filed 2 January 2002)

## Landlord and Tenant— commercial lease—declaratory judgment—change in radio station's call letters

A de novo review reveals that the trial court did not err in a declaratory judgment action seeking the meaning and application of a commercial lease by concluding plaintiffs' change in the radio station's call letters from WKIX-FM to WRBZ-AM did not constitute a breach of the lease and rendered moot defendant's counterclaims seeking possession of the premises and the fair rental value of the premises from the date of termination to the date that plaintiffs vacate the premises, because: (1) there is a latent ambiguity in the words "Radio Station WKIX-AM" found in Section 7 of the lease; (2) a review of the lease in its entirety and considering extrinsic facts revealed that the original parties to the lease used the call letters WKIX to describe and name the radio station and not to restrict the use of the transmitter site only to a radio station using particular call letters; (3) it can be deduced from the automatic consent for assignment or sublease of the original tenant's interests under the lease to a transferee of the radio station's license that the original parties knew that the radio station license might be transferred from time to time and the transferee/licensee would automatically be assigned or subleased the transmitter site; and (4) the original parties intended to have a long-term lease, the transmitter site was built and was being used to broadcast the radio station's signal at the time of the lease's formation, and the original parties were in the AM radio business.

Judge TYSON concurring in the result.

Appeal by defendant Flora Development, LLC, from judgment entered 18 August 2000 by Judge Howard E. Manning, Jr., in Wake County Superior Court. Heard in the Court of Appeals 18 October 2001.

ALCHEMY COMMUNICATIONS CORP. v. PRESTON DEV. CO.

[148 N.C. App. 219 (2002)]

*Womble Carlyle Sandridge & Rice, PLLC, by John C. Cooke and Christine Carlisle Odom, for plaintiff-appellees.*

*Higgins, Frankstone, Graves & Morris, P.A., by David J. Hart, for defendant-appellant.*

MARTIN, Judge.

Defendant Flora Development, LLC (hereinafter "Flora"), appeals from a declaratory judgment in which the trial court declared the meaning of several provisions in a commercial lease. The trial court entered judgment declaring the rights of the parties under the lease and dismissing defendants' counterclaims in which defendants sought possession and rentals, based upon assertions that plaintiffs, Alchemy Communications Corp. and Alchemy Communications Limited Partnership #1 (hereinafter "Alchemy"), were in default of the lease.

Briefly summarized, the evidence showed the following facts: In 1986, Adelphi Broadcasting Company sold radio station WKIX-AM to Metroplex Communications of North Carolina, Inc. (hereinafter "Metroplex"). As a part of the sale, Metroplex and Adelphi Realty Company (hereinafter "Adelphi"), an affiliate of Adelphi Broadcasting Company, entered into a lease dated 2 September 1986 in which Adelphi leased the transmitter site to Metroplex. The transmitter site is approximately twenty-five acres in size and consists of five towers, each over 400 feet high, a small building housing the transmission equipment and underground copper wires radiating 360 degrees that run from each of the towers to the edge of the transmitter site. Under the lease, Metroplex leased the transmitter site from Adelphi for fifty years, with an option to extend the lease for fifty additional years. Thus, the lease term expires in the year 2036 but may be extended until the year 2086. The annual rent due the landlord under the lease is an amount equal to the annual *ad valorem* real property taxes assessed against the transmitter site.

In 1989, plaintiff Alchemy purchased WKIX-AM from Metroplex and assumed its obligations under the lease. On 1 January 1994, plaintiff Alchemy changed the call letters of WKIX-AM to WYLT-AM, and then again on 31 July 1995 from WYLT-AM to WRBZ-AM. In addition to changing the call letters, plaintiff Alchemy changed the format of WKIX-AM from primarily a music format to a sports and talk format. Plaintiff Alchemy also moved its offices. The only characteristic com-

mon to the former WKIX-AM and the present WRBZ-AM is that they both broadcast on the 850-AM frequency.

On 25 January 1995, an affiliate of defendant Flora acquired fee simple title to the transmitter site and surrounding land. Timothy R. Smith testified in a deposition on behalf of defendant Flora that with the lease in place, the transmitter site has a negative value. According to Smith, if defendant Flora could oust plaintiff Alchemy, the transmitter site's raw land value would be between 1.25 million and 2.5 million dollars. After realizing that the land in question would be much more valuable to defendant Flora if there were no lease, defendants attempted to negotiate a relocation deal with plaintiff Alchemy. However, this attempt was abandoned after plaintiff Alchemy determined that relocation would not be economically feasible.

Thereafter, defendants devised a plan to encircle the transmitter site with new development. This triggered plaintiffs to file a declaratory judgment action against defendants. Plaintiffs sought a declaration of the meaning and application of the lease's express covenant of quiet enjoyment. After plaintiffs instituted its declaratory judgment action, on 26 May 1999, defendant Flora sent plaintiff Alchemy written notice of default on grounds that plaintiff Alchemy had: (1) failed to use the premises for the transmission of WKIX-AM; (2) licensed the use of the premises to WRBZ-AM; and (3) assigned the lessee's interest without defendant Flora's consent. The notice gave plaintiff Alchemy ten days to cure the alleged defaults. After plaintiffs failed to cure the defaults alleged by defendants, on 18 June 1999, defendants filed counterclaims against plaintiffs seeking possession of the premises and the fair rental value of the premises from the date of termination to the date that plaintiffs vacate the premises.

Defendants sought summary judgment as to their counterclaims and plaintiffs sought summary judgment as to defendants' counterclaims. Both motions were denied on 16 December 1999. After a non-jury trial, the trial court entered judgment on 18 August 2000 declaring the rights of the parties and dismissing defendants' counterclaims. The trial court stated in its judgment that it was basing its decision only upon the four corners of the lease and the facts which appeared to be undisputed between the parties. Defendant Flora appeals.

The sole issue on appeal is whether plaintiff Alchemy violated Section 7 of the lease since it changed the radio station's call letters

from WKIX-AM to WRBZ-AM. Section 7 of the lease provides in relevant part as follows:

USE OF PREMISES BY LESSEE: The Lessee may use the Premises only for the purpose of thereupon maintaining its AM radio transmitter and AM transmission towers for Radio Station WKIX-AM; for any and all uses which are ancillary to the use of this property for WKIX radio transmission purposes, such as parking, the erection of additional buildings for radio transmitters or for radio studios and other like uses; and, except with Lessor's permission, for no other purpose. . . . Notwithstanding the foregoing, so long as Lessee shall remain the licensee of and actively operate Radio Station WKIX-AM, it may license to others the use of its transmission towers located upon the Premises for mounting antennae and for other radio transmission purposes and permit others to erect structures for housing transmission equipment ancillary to their use of the towers for transmission purposes.

At the outset, we must establish the appropriate standard of review. The issue on appeal is a matter of contract interpretation and thus, a question of law. *Harris v. Ray Johnson Const. Co., Inc.*, 139 N.C. App. 827, 534 S.E.2d 653 (2000). Therefore, the proper standard of review is *de novo*. *Id.* Since in the instant case, no errors have been assigned to any of the findings of fact contained in the judgment, the findings of fact are presumed to be correct. *Okwara v. Dillard Dept. Stores, Inc.*, 136 N.C. App. 587, 525 S.E.2d 481 (2000).

In the case *sub judice*, the trial court found the following facts:

1. The Plaintiff Alchemy Communications Limited Partnership #1 ("ACLP") is licensed to operate and own the AM radio station that broadcasts at 850-AM (the "Radio Station"). At the time of the formation of the Lease, the Radio Station was called WKIX-AM and now is called WRBZ-AM. ACLP is the successor-in-interest to the tenant under the Lease.

2. Since 1982, the Radio Station's signal has been transmitted from the premises leased to the plaintiffs and their predecessor-in-interest pursuant to the Lease (the "Transmitter Site"). The Transmitter Site is approximately twenty-five (25) acres in size and consists of five (5) towers, each over 400-feet high, a small building housing the transmission equipment and underground

copper wires radiating 360 degrees from each of the towers that run to the edge of the Transmitter Site.

3. The Transmitter Site is a portion of a 95-acre tract acquired by the defendant Flora Development, LLC ("Flora"). The defendant Flora acquired the 95-acre tract subject to the Lease. The defendant Flora has purchased tracts of property adjacent to the 95-acre tract, assembled them together and owned an overall tract of approximately 225 acres at the time this action was filed.

4. Flora is the successor-in-interest to the original landlord, Adelphi Realty Company, a division of Mann Media ("Adelphi Realty") under the Lease by way of purchasing the 95-acre tract.

5. Preston Development Company sometimes acts as the agent or apparent agent on behalf of Flora in regard to the Lease and the development activities occurring on the overall tract currently owned by Flora.

6. When the defendant Flora acquired the 95-acre tract, it had record and actual notice of: (1) the Lease, (2) the use of the Transmitter Site, (3) the easement between Adelphi Realty and the Town of Cary. . . and (4) the Memorandum of Lease. . . .

7. In September of 1986, Adelphi Realty, the original landlord, formed the Lease with Metroplex Communications of North Carolina, Inc., the original tenant. Both the original landlord and the original tenant of the Lease were in the AM radio business when they formed the Lease.

8. The defendant Flora succeeded to Adelphi Realty's rights and duties as established by the Lease and currently possesses the rights granted and the duties imposed upon the landlord Adelphi Realty pursuant to the Lease.

9. Pursuant to the Lease, the initial Lease term expires in the year 2036 and may be extended for another fifty (50) years or until the year 2086. The annual rent due the landlord is to be in the amount of the annual *ad valorem* real property taxes assessed against the Transmitter Site. Put another way, the annual rent under the lease is determined by the amount of the real property tax assessed against the Transmitter Site each year.

Based on these undisputed findings and the lease, the trial court made conclusions of law as to the meaning of the lease, the legal

effect of the change of the radio station call letters in 1994 and 1995, and the legal effect of possible future call letter changes. The court stated in its judgment that it based its decision upon the four corners of the lease and the facts which appear to be undisputed between the parties. The court ruled that the change in call letters by plaintiff Alchemy from WKIX-AM to WYLT-AM and then to WRBZ-AM did not constitute a breach of the lease, nor would any subsequent change in call letters by a rightful tenant constitute a breach of the lease. The trial court also dismissed defendant's counterclaims.

Defendant Flora contends that the trial court erred in concluding that the lease extends to the licensee of the radio station which broadcasts at 850-AM. Defendant argues that the lease and specifically Section 7 is unambiguous and that the trial court improperly considered extrinsic evidence under the parol evidence rule. We hold that the trial court properly determined that plaintiff Alchemy had not breached the lease by changing the radio station's call letters.

"The terms of a lease, like the terms of any contract, are construed to achieve the intent of the parties at the time the lease was entered into." *Lexington Ins. Co. v. Tires Into Recycled Energy and Supplies, Inc.*, 136 N.C. App. 223, 225, 522 S.E.2d 798, 800, (1999), *disc. review denied*, 351 N.C. 642, 543 S.E.2d 872 (2000). Additionally, the Court should reject an interpretation of the terms of a lease which would be unreasonable or unequal if this can be done consistently with the tenor of the agreement. *Discount Corp. v. Mangel's*, 2 N.C. App. 472, 163 S.E.2d 295 (1968). Further, "a construction which is most obviously just is to be favored as being most in accordance with the presumed intention of the parties." *Id.* at 477, 163 S.E.2d at 299.

Even though words in a lease seem clear and unambiguous, a latent ambiguity exists if their meaning is less than certain when viewed in the context of all the surrounding circumstances. *Jefferson-Pilot Life Ins. Co. v. Smith Helms Mulliss & Moore*, 110 N.C. App. 78, 429 S.E.2d 183 (1993). If a latent ambiguity exists, preliminary negotiations and surrounding circumstances may be used to determine what the parties intended; *id.*, for as our Supreme Court has noted, "he who stops at the letter 'goes but skin-deep into the meaning.'" *Temple Co. v. Guano Co.*, 162 N.C. 87, 90, 77 S.E. 1106, 1107 (1913) (citations omitted). A lease should not "be interpreted according to the strict letter, especially if it will defeat the manifest intention, as gathered from the whole instrument." *Id.* at 90, 77 S.E. at

1107. Another rule of interpretation for leases is that an undefined word in a lease "should be given its natural and ordinary meaning." *Charlotte Housing Authority v. Fleming*, 123 N.C. App. 511, 514, 473 S.E.2d 373, 375 (1996).

Since this case deals with a lease provision that plaintiff Flora argues places a restriction on the use of the land, we must refer to rules regarding the interpretation of use restrictions. Use restrictions in leases will not be implied and will be construed against the landlord. *See e.g., Jenkins v. Rose's Stores, Inc.*, 213 N.C. 606, 197 S.E. 174 (1938); James A. Webster, Jr., *Webster's Real Estate Law in North Carolina*, § 12-20, at 511 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999). Such a provision must be explicit and unambiguous. *Forrest Drive Assoc. v. Wal-Mart Stores, Inc.*, 72 F. Supp. 2d 576 (M.D.N.C. 1999). A mere statement of the purpose of a lease or words that describe the use of the premises are deemed permissive rather than restrictive. James A. Webster, Jr., *Webster's Real Estate Law in North Carolina*, § 12-20, at 511 (Patrick K. Hetrick & James B. McLaughlin, Jr. eds., 5th ed. 1999).

Applying these rules to the lease at issue in this case, we first note that there is a latent ambiguity in the words "Radio Station WKIX-AM" found in Section 7 of the lease. On their face, the words seem to be clear and unambiguous. However, when looking at the whole instrument and the surrounding circumstances, these words are less than certain. Therefore, it is appropriate for the trial court to consider such evidence as preliminary negotiations and surrounding circumstances in order to clarify the terms and determine what the parties intended. *See Thomco Realty, Inc. v. Helms*, 107 N.C. App. 224, 418 S.E.2d 834, *disc. review denied*, 332 N.C. 672, 424 S.E.2d 407 (1992).

From a review of the lease in its entirety and considering extrinsic facts, it is clear that the original parties to the lease used the call letters, WKIX, to describe and name the radio station and not to restrict the use of the transmitter site only to a radio station using particular call letters. Bernard Mann, owner of Adelphi (original lessor), provided the following explanation for the phrase "radio station WKIX-AM" Section 7 of the lease during his deposition:

Hart:   But why specifically does it say radio station WKIX-AM?

Mann:  That's what it was called at that time.

Hart:   If your intent was to limit it to AM radio transmission purposes, wouldn't it have been sufficient to end that clause after the word "towers", so that—

Mann:  But that was the name of it. That was the name of the radio station.

Hart:   Why was it important to name the radio station?

Mann:  How do you refer to it unless you name it?

Hart:   Well, you can call it—couldn't this section reasonably say, the lessee may use the premises only for the purpose of thereupon maintaining it's AM transmitter and AM transmission towers?

Mann:  I suppose it could, but it had a name, we used the name.

Hart:   How many times does the—

Mann:  It's not any different than having a driver's license and you get married, so you get your name changed. You're still permitted to drive.

Section 19 of the lease also provides insight into the original parties' intent. Section 19, in relevant part, provides the following:

(19) ASSIGNMENT AND SUB-LEASING. Lessee shall not assign, mortgage or encumber this lease or the Premises without the prior written consent of the Lessor in each instance which consent shall not be unreasonably withheld. Notwithstanding the foregoing, Lessor consents to the assignment or sublease by Lessee of its interests under this lease to the transferee of its license for the operation of WKIX-AM . . . .

It can be deduced from the automatic consent for assignment or sub-lease of the original tenant's interests under the lease to the transferee of the radio station's license that the original parties knew that the radio station license might be transferred from time to time and the transferee/licensee would automatically be assigned or sub-leased the transmitter site. We must also note that it was clear that the original parties intended to have a long-term lease, the transmitter site was built and was being used to broadcast the radio station's signal at the time of the lease's formation, and the original parties were in the AM radio business. Thus, the original parties knew the technical meaning, the use and purpose of AM radio call letters gen-

erally and "WKIX-AM" particularly. After reviewing the undisputed extrinsic facts and the lease itself, we conclude that the term "WKIX-AM" in Section 7 of the lease was simply descriptive of the AM radio station that broadcasts at 850-AM and does not restrict the use of the transmitter site to the radio station WKIX-AM. Accordingly, Alchemy is not in default for changing the call letters to WYLT-AM and then to WRBZ-AM.

Defendant Flora complained of, but did not assign error to, the trial court's dismissal of defendants' counterclaims before they presented any evidence. The trial court's ruling that the change in call letters did not constitute a breach of the lease necessarily rendered moot defendant's counterclaims seeking possession of the premises and the fair rental value of the premises from the date of termination to the date that plaintiffs vacate the premises. Since the trial court concluded that there was no breach in the lease, there was no date of termination.

Affirmed.

Judge WALKER concurs.

Judge TYSON concurs in the result.

TYSON, Judge, concurring in the result.

I agree with the majority's decision that plaintiff Alchemy did not breach its lease merely by changing the radio station's call letters. I write separately because the lease does not contain a latent ambiguity that would permit extrinsic evidence or testimony. I would construe the lease within its four corners.

The trial court based its interpretation upon the "four corners" of the lease, and found that the lease did not contain ambiguity. Accordingly, extrinsic evidence should not have been allowed to explain the terms of the unambiguous lease.

If a writing is unambiguous, "all prior and contemporaneous negotiations . . . are deemed merged in the written agreement . . . . [P]arol testimony . . . or conversations inconsistent with the writing, or which tend to substitute a new and different contract from the one evidenced by the writing, is incompetent." *Neal v. Marrone*, 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953) (citations omitted). Trial courts that do not specifically find an ambiguity in a fully integrated writing,

should refrain from smuggling extrinsic matters into evidence to explain the document.

I agree with the majority that "the Court should reject an interpretation of the terms of a lease which would be unreasonable or unequal if this can be done consistently with the tenor of the agreement." I do not agree, however, that the lease, construed as a whole, is ambiguous. "An ambiguity exists where the language of a contract is *fairly and reasonably susceptible* to either of the constructions asserted by the parties." *Glover v. First Union National Bank*, 109 N.C. App. 451, 456, 428 S.E.2d 206, 209 (1993) (citing *St. Paul Fire & Marine Ins. v. Freeman-White Assoc.*, 322 N.C. 77, 366 S.E.2d 480 (1988) (emphasis supplied)).

Here, the plain language of the lease allows the lessee and its assignees to use the premises to operate and maintain a radio station including transmitter and transmission towers "for any and all uses which are ancillary to the use of this property for . . . radio transmission purposes." The parties remain bound to the terms of the lease regardless of how valuable the land containing the premises later becomes. Defendant landlord, as successor-in-interest to Adelphi Realty Company, purchased the land subject to the lease in this action. *Mosely & Mosely Builders, Inc. v. Landin Ltd.*, 97 N.C. App. 511, 525, 389 S.E.2d 576, 584 (1990).

I concur in the result.