MARTIN, Justice.
On 30 June 1998, at approximately 6:15 p.m., plaintiff Melissa Register was injured in an automobile accident. At the time of the accident, plaintiff was riding as a passenger in a vehicle driven by defendant Steve Allen White.
The automobile driven by defendant was owned by Jimmy White (Mr. White). Mr. White held a $50,000.00 liability insurance policy provided by State Farm Insurance Company (State Farm). Plaintiff's father, Terry Register, Sr. (Mr. Register), owned a policy of insurance issued by unnamed defendant North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau). The Farm Bureau policy (the policy) provided underinsured motorist (UIM) coverage in the amount of $100,000.00 per person, $300,000.00 per accident, for bodily injury claims. On 28 July 2000, plaintiff filed a complaint against defendant White in Craven County Superior Court, alleging that she suffered various spinal injuries as a result of the accident. On 5 September 2000, Farm Bureau filed a request for monetary relief sought, to which plaintiff responded that she was seeking $400,000.00 in damages for her personal injuries. On or about 20 September 2000, Farm Bureau filed an answer generally denying the liability and damage allegations in plaintiff's complaint and reserving its right to defend the case in its name or in the name of defendant.
On 3 November 2000, the trial court ordered a mediated settlement conference, which resulted in an impasse on 27 February 2001. The case was subsequently calendered for trial the week of 13 August 2001. Mr. White's liability carrier, State Farm, tendered its liability limits of $50,000.00 on 8 August 2001.
In a letter to Farm Bureau dated 24 September 2001, plaintiff demanded arbitration pursuant to the UIM provision in Mr. Register's insurance policy. Farm Bureau acknowledged receipt of plaintiff's arbitration demand in a letter dated 2 October 2001, asking plaintiff's attorney, "[h]ow do you want to do it?" Approximately two weeks later, on 15 October 2001, Farm Bureau stated in a letter to plaintiff that it was "tak[ing] the position that the demand for arbitration is now time barred, and arbitration is no longer an alternative dispute resolution mechanism available." Plaintiff filed a complaint on 24 January 2002, seeking a declaration obligating Farm Bureau to arbitrate the matter. Farm Bureau filed an answer on 2 April 2002. On 24 May 2002, with the declaratory judgment action still pending, plaintiff filed a motion to compel arbitration. Farm Bureau filed a response on 31 May 2002. Plaintiff voluntarily dismissed the declaratory judgment action without prejudice on 10 June 2002.
The trial court filed an order denying plaintiff's motion to compel on 5 August 2002. In its order, the trial court stated that, by the terms of the policy, plaintiff could demand arbitration only "within the time limit allowed for bodily injury or death actions in the State where the accident occurred." The trial court found that the accident occurred on 30 June 1998 and that plaintiff demanded arbitration on 24 September 2001. Thus, the trial court concluded, plaintiff's motion to compel arbitration was time-barred. Plaintiff appealed.
On appeal, the Court of Appeals reversed and remanded with instructions to enter an order compelling arbitration. Register v. White, 160 N.C. App. 657, 587 S.E.2d 95 (2003). On 15 December 2003, we allowed Farm Bureau's petition for discretionary review.
The sole issue before this Court is whether, under the terms of the policy, plaintiff's contractual right to demand arbitration became time-barred over one month before it accrued. Questions concerning the meaning of contractual provisions in an insurance policy are reviewed de novo on appeal. See Humphries v. City of Jacksonville, 300 N.C. 186, 187, 265 S.E.2d 189, 190(1980); Parker v. State Capital Life Ins. Co., 259 N.C. 115, 117, 130 S.E.2d 36, 38 (1963).
In a section titled "ARBITRATION," Part C2 of the policy provides an insured with a contractual right to demand arbitration under specified circumstances. The arbitration provision states, in pertinent part:
If we and an insured do not agree:
1. Whether that insured is legally entitled to recover compensatory damages from the owner or driver of an . . . underinsured motor vehicle; or
2. As to the amount of such damages;
the insured may demand to settle the dispute by arbitration.
The following procedures will be used:
. . . .
5. Any arbitration action against the company must begin within the time limit allowed for bodily injury or death actions in the state where the accident occurred.
According to Farm Bureau, the arbitration provision's "time limit allowed for bodily injury or death actions" incorporates by reference North Carolina's statute of limitations for bodily injury actions, N.C.G.S. § 1-52(16). N.C.G.S. § 1-52(16) imposes a three-year statutory limitations period on bodily injury actions, and further provides that "the cause of action . . . shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs." N.C.G.S. § 1-52(16) (2003). In the instant case, Farm Bureau contends that the bodily harm to plaintiff became apparent on the date of the accident, 30 June 1998. Thus, Farm Bureau argues, the three-year limitations period commencedon that date, and plaintiff's 24 September 2001 demand for arbitration was contractually time-barred.
The Court of Appeals agreed that a three-year limitations period applied to plaintiff's right to demand arbitration, but concluded that the limitations period had not expired at the time plaintiff made such a demand. Register, 160 N.C. App. at 661-62, 587 S.E.2d at 97-98. The court stated that because plaintiff had no right to seek UIM coverage before 8 August 2001, her right to demand arbitration to resolve a UIM dispute could not expire before that date. Id. at 662, 587 S.E.2d at 98. Thus, the Court of Appeals reasoned, the arbitration provision was ambiguous as to when the "time limit" for plaintiff's contractual right to demand arbitration began to run. Id. The Court of Appeals concluded that the arbitration "time limit" provided a three-year limitations period that began on the date plaintiff acquired a contractual right to demand arbitration - in this case, 8 August 2001. Id. Accordingly, the Court of Appeals held that plaintiff's 24 September 2001 demand for arbitration was within the contractual time limit. Id.
Before this Court, Farm Bureau contends the arbitration provision in the policy is plain and unambiguous as to when the three-year "time limit" begins to run, and the Court of Appeals erred in construing it other than according to its plain meaning. We disagree.
The primary goal in interpreting an insurance policy is to discern the intent of the parties at the time the policy wasissued. See Woods v. Nationwide Mut. Ins. Co., 295 N.C. 500, 505, 246 S.E.2d 773, 777 (1978); Jamestown Mut. Ins. Co. v. Nationwide Mut. Ins. Co., 266 N.C. 430, 438, 146 S.E.2d 410, 416 (1966). If the terms of the policy are "`plain, unambiguous, and susceptible of only one reasonable construction, the courts will enforce the contract according to its terms.'" Klein v. Avemco Ins. Co., 289 N.C. 63, 66, 220 S.E.2d 595, 597 (1975) (quoting Walsh v. United Ins. Co., 265 N.C. 634, 639, 144 S.E.2d 817, 820 (1965)). "`If, however, the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations, the doubts will be resolved against the insurance company and in favor of the policyholder.'" C.D. Spangler Constr. Co. v. Indus. Crankshaft & Eng'g Co., 326 N.C. 133, 142, 388 S.E.2d 557, 563 (1990) (quoting Woods, 295 N.C. at 506, 246 S.E.2d at 777).
An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations. See Woods, 295 N.C. at 506, 246 S.E.2d at 777; see also Dawes v. Nash Cty., 357 N.C. 442, 448-49, 584 S.E.2d 760, 764 (2003); Gaston Cty. Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299-300, 524 S.E.2d 558, 563 (2000); Lanning v. Allstate Ins. Co., 332 N.C. 309, 317, 420 S.E.2d 180, 185 (1992); C.D. Spangler, 326 N.C. at 142, 388 S.E.2d at 563; Silvers v. Horace Mann Ins. Co., 324 N.C. 289, 295, 378 S.E.2d 21, 25 (1989). An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of thecontractual provisions. See Pleasant v. Motors Ins. Co., 280 N.C. 100, 102, 185 S.E.2d 164, 166 (1971); Miller v. Green, 183 N.C. 652, 654, 112 S.E. 417, 418 (1922). In interpreting the language of an insurance policy, courts must examine the policy from the point of view of a reasonable insured. Grant v. Emmco Ins. Co., 295 N.C. 39, 43, 243 S.E.2d 894, 897 (1978). "Where the immediate context in which words are used is not clearly indicative of the meaning intended, resort may be had to other portions of the policy and all clauses of it are to be construed, if possible, so as to bring them into harmony." Wachovia Bank & Tr. Co. v. Westchester Fire Ins. Co., 276 N.C. 348, 355, 172 S.E.2d 518, 522 (1970).
In the instant case, we cannot conclude that a reasonable person in plaintiff's position would understand the contractual phrase "the time limit allowed for bodily injury or death actions in the state where the accident occurred" to be plain and unambiguous when applied to the facts at hand. The arbitration provision lists the applicable "time limit" among the "procedures [to] be used" when insurer and insured "do not agree" as to the existence or extent of liability on the part of the underinsured motorist. Similarly, the Uniform Arbitration Act (UAA), which was in effect at the time the parties entered into this contract, provides that two or more parties "may include in a written contract a provision for the settlement by arbitration of any controversy thereafter arising between them relating to such contract." N.C.G.S. § 1-567.2 (Supp. 1998) (repealed 2003) (emphasis added). Although the controversy need not be"justiciable" in order to be arbitrable, id., both the policy and the UAA presuppose the existence of some disagreement or "controversy" to serve as the subject of arbitration. On Farm Bureau's interpretation, however, the three-year "time limit" would run against an insured from the moment his or her injury became apparent, whether or not a "disagree[ment]" then existed or the insured had any reason to anticipate a future "controversy" with his or her UIM insurer. This construction is difficult to square with the contractual language describing the time limit as a "procedure" to be followed "if [the UIM insurer] and an insured do not agree" about a third-party underinsured motorist's liability to the insured.
Moreover, the arbitration provision's oblique reference to "the time limit" for bodily injury actions in the state where the accident occurred does not necessarily compel incorporation of the accrual provision of N.C.G.S. § 1-52(16). We agree that this contractual language incorporates by reference the applicable limitations period for personal injury actions - here, the three-year limitations period of N.C.G.S. § 1-52. It is far from clear, however, that the parties also intended to import the accrual scheme of N.C.G.S. § 1-52(16), which provides that the statutory limitations period for personal injury actions begins to run when the bodily injury "becomes apparent or ought reasonably to have become apparent to the claimant." N.C.G.S. § 1-52(16). On its face, the arbitration provision is silent as to when the contractual "time limit" begins to run. Thus, the arbitration provision is ambiguous not as to the duration of theapplicable "time limit," but as to when that "time limit" begins to run. An ambiguity exists because the arbitration provision is reasonably susceptible of at least two different constructions: (1) that the three-year "time limit" begins to run at the time the bodily injury becomes or should become apparent to the injured insured, or (2) that the three-year "time limit" begins to run at the time the right to demand arbitration arises.
The application of any statutory or contractual time limit requires an initial determination of when that limitations period begins to run. "A cause of action generally accrues when `the right to institute and maintain a suit arises.'" Ocean Hill Joint Venture v. N.C. Dep't of Env't, Health & Natural Res., 333 N.C. 318, 323, 426 S.E.2d 274, 277 (1993) (quoting Thurston Motor Lines, Inc. v. General Motors Corp., 258 N.C. 323, 325, 128 S.E.2d 413, 415 (1962)). Thus, a statutory limitations period on a cause of action necessarily cannot begin to run before a party acquires a right to maintain a lawsuit. See Raftery v. Wm. C. Vick Constr. Co., 291 N.C. 180, 186-87, 230 S.E.2d 405, 408 (1976) (until there is a legal right to maintain the underlying action, "the statute of limitations cannot run").
In the instant case, plaintiff's right of action in tort against defendant White unquestionably arose on 30 June 1998, the date her injury "bec[ame] apparent." N.C.G.S. § 1-52(16). Thus, the statutory limitations period on plaintiff's tort claim began to run on that date. It is well settled, however, that a UIM claim is independent of the underlying tort action and does not necessarily accrue at the time an injurybecomes apparent. See Liberty Mut. Ins. Co. v. Pennington, 356 N.C. 571, 576-77, 573 S.E.2d 118, 122 (2002) (UIM claim not barred by three-year limitations period in N.C.G.S. § 1-52(16)); see also Oanes v. Allstate Ins. Co., 617 N.W.2d 401, 406 (Minn. 2000) (UIM claim accrues on date of settlement with or judgment against the tortfeasor, not date of injury); Wille v. Geico Cas. Co., 2 P.3d 888, 892 (Okla. 2000) (cause of action to recover UIM benefits does not accrue on date of injury); cf. N.C. Ins. Guar. Ass'n v. State Farm Mut. Auto. Ins. Co., 115 N.C. App. 666, 672-73, 446 S.E.2d 364, 369 (1994) (cause of action against UM carrier accrued at time insured was "at liberty" to sue insurer, not date of insured's injury). Indeed, under the terms of the policy, plaintiff's contractual right to UIM coverage did not arise until the liability limits of any applicable bonds or insurance policies were exhausted by settlement or the payment of judgments. The UIM provision of the policy provides:
We will . . . pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury sustained by an insured caused by an accident. The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle. We will pay for these damages only after the limits of liability under any applicable liability bonds or polices have been exhausted by payments of judgments or settlements, unless we:
1. Have been given written notice in advance of settlement between an insured and the owner or operator of the underinsured motor vehicle; and
2. Consent to advance payment to the insured in the amount equal to the tentative settlement. N.C.G.S. § 20-279.21(b)(4), the terms of which are incorporated into all UIM agreements, see Nationwide Mut. Ins. Co. v. Mabe, 342 N.C. 482, 494, 467 S.E.2d 34, 41 (1996), corrected by 342 N.C. 899 (1996), also requires the exhaustion of liability limits before UIM coverage will apply. The statute provides:
Underinsured motorist coverage is deemed to apply when, by reason of payment of judgment or settlement, all liability bonds or insurance policies providing coverage for bodily injury caused by the ownership, maintenance, or use of the underinsured highway vehicle have been exhausted. Exhaustion of that liability coverage for the purpose of any single liability claim presented for underinsured motorist coverage is deemed to occur when either (a) the limits of liability per claim have been paid upon the claim, or (b) by reason of multiple claims, the aggregate per occurrence limit of liability has been paid.
N.C.G.S. § 20-279.21(b)(4) (2001). Thus, under both the policy and the governing statute, an insured's contractual right to UIM coverage is expressly conditioned on the exhaustion of the liability carrier's policy limits. Id. Exhaustion occurs when the liability carrier has tendered the limits of its policy in a settlement offer or in satisfaction of a judgment. Id. Once this exhaustion requirement is satisfied, but not before, an insured may seek UIM benefits from a UIM carrier. Cf. Johnson v. N.C. Farm Bureau Ins. Co., 112 N.C. App. 623, 624-25, 436 S.E.2d 265, 267 (1993) ("Underinsured insurance is derivative in nature and depends [in part] upon . . . the exhaustion of the underinsured operator's liability insurance."). As a corollary of this principle, an insured's contractual right to demand arbitration of a UIM claim is also unavailable until the liability carrier's policy limits have been exhausted. See Hackett v. Bonta, 113 N.C. App. 89, 97, 437 S.E.2d 687, 692 (1993) (right to demand arbitration of a UIM claim does not arise until the antecedent right to UIM coverage has arisen); see also George L. Simpson, III, North Carolina Uninsured and Underinsured Motorist Insurance: A Handbook § 4:2, at 266-67 (2003) ("[I]t seems clear that the insured may not demand arbitration" if such demand occurs "before the liability insurer tenders its limits" because there has not "been an exhaustion of the liability policy by payment of judgment or settlement and, as a consequence, the insured [is] not yet . . . entitled to recover from the UIM insurer."). Thus, if the three-year "time limit" referenced in the arbitration provision is deemed to commence at the time of an insured's injury, the right to demand arbitration may expire - paradoxically - before it ever accrues. If, on the other hand, the applicable "time limit" is understood to commence at the time the right to demand arbitration arises, it begins to run no earlier than the time when the liability carrier's policy limits are exhausted.
In support of the former construction, Farm Bureau argues that the right to UIM coverage and the right to demand arbitration to settle a UIM dispute are wholly independent and that "[o]nce the time limitation [for arbitration] has expired, arbitration ceases to be available, regardless of whether plaintiff had a right to seek payment of UIM benefits." We agreethat the contractual rights to seek UIM coverage and to demand arbitration of a UIM dispute are not necessarily coextensive and that an insurance policy may impose a more restrictive time limit on the latter. Cf. Adams v. Nelsen, 313 N.C. 442, 447-48, 329 S.E.2d 322, 325 (1985) (enforcing contractual time limit on insured's right to demand arbitration). The issue presented here, however, is not whether a contractual right to demand arbitration to resolve a UIM dispute may expire before the right to UIM coverage itself expires. Rather, the issue is whether the specific provisions of this particular policy should be construed to create a right that may be time-barred before it ever accrues.
"[A] contract of insurance should be given that construction which a reasonable person in the position of the insured would have understood it to mean and, if the language. . . is reasonably susceptible of different constructions, it must be given the construction most favorable to the insured. . . ." Grant, 295 N.C. at 43, 243 S.E.2d at 897; see also Henderson v. United States Fid. & Guar. Co., 346 N.C. 741, 745, 488 S.E.2d 234, 237 (1997) ("Any ambiguity as to the meaning of words used in an insurance policy must be construed in the policyholder's favor."); Brown v. Lumbermans Mut. Cas. Co., 326 N.C. 387, 392, 390 S.E.2d 150, 153 (1990); cf. Restatement (Second) of Contracts § 206 (1979) ("In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party who supplies the words or from whom a writing otherwise proceeds."). Indeed, we have stated that "`[p]robably the mostimportant general rule guiding the courts in the construction of insurance policies is that all doubt or uncertainty, as to the meaning of the contract, shall be resolved in favor of the insured.'" Jones v. Cas. Co., 140 N.C. 262, 264, 52 S.E. 578, 579 (1905) (citations omitted); accord Walsh, 265 N.C. at 638, 144 S.E.2d at 820 ("[C]ourts construe [insurance] contracts most strongly against the insurer and most liberally in favor of the insured."). In addition, public policy "requires that the courts resolve any doubts concerning the scope of arbitrable issues in favor of arbitration." Johnston Cty. v. R.N. Rouse & Co., 331 N.C. 88, 91, 414 S.E.2d 30, 32 (1992).
Applying these canons of construction, we conclude that a reasonable insured would construe the arbitration provision at issue to impose a three-year "time limit" within which the insured may exercise his or her contractual right to demand arbitration. We further conclude that, in light of the UIM statute and the UIM provision in the policy, a reasonable insured would likely believe that the three-year "time limit" begins to run when the right to demand arbitration arises; that is, when the applicable liability policies have been exhausted and a dispute concerning UIM coverage has arisen. Cf. Heil v. United Ohio Ins. Co., 66 Ohio App. 3d 307, 309-12, 584 N.E.2d 19, 21-22 (1990) (holding that time limitation clause barring insured's right to demand arbitration after twelve months had elapsed from "the date of the accident" was ambiguous when read in conjunction with the UIM exhaustion provision, because "it would not be unreasonable for a policyholder to conclude that he must pursuethe [liability] coverage to conclusion prior to filing his . . . arbitration demand against [the UIM insurer]"). To the extent that there may be some doubt concerning the intended meaning of the arbitration provision, we must resolve those doubts in favor of the insured and in favor of arbitration. See Jones, 140 N.C. at 264-65, 52 S.E. at 579; R.N. Rouse, 331 N.C. at 91, 414 S.E.2d at 32. Accordingly, we hold that the three-year "time limit" referenced in the arbitration provision begins to run at the time an insured acquires a contractual right to demand arbitration. To hold otherwise would require us to assume that a reasonable insured would read the arbitration provision to vest insured persons with a right that could become time-barred before it ever accrued. We do not believe that such a paradoxical construction can be deemed a "plain meaning" of the policy at issue.
In the present case, plaintiff's right to demand arbitration of her UIM claim could not have arisen prior to 8 August 2001, when defendant White's insurance company tendered the full limits of its policy. Thus, plaintiff's 24 September 2001 demand for arbitration fell within the three-year "time limit" referenced in the policy, and the trial court erred in determining that plaintiff's demand was time-barred. Accordingly, the decision of the Court of Appeals is affirmed.
AFFIRMED.