Justice v. Mission Hosp., Inc., 2019 NCBC 21.

STATE OF NORTH CAROLINA

COUNTY OF BUNCOMBE

RANDY JUSTICE, Individually and on
behalf of all persons similarly situated;
CATHY JUSTICE, Individually and on
behalf of all persons similarly situated;
and CATHY JUSTICE, Guardian ad
Litem for the minor child JULYETTE
WILKERSON,

        Plaintiffs,

   v.

MISSION HOSPITAL, INC. d/b/a
"MISSION HOSPITALS" or "MISSION
HOSPITAL"; NATIONAL GENERAL
INSURANCE COMPANY; and
REVCLAIMS, LLC,

        Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
18 CVS 1755


**ORDER & OPINION ON
MOTIONS TO DISMISS**


1. THIS MATTER is before the Court on Motions to Dismiss for Failure to State a Claim by each Defendant and a Motion to Dismiss for Lack of Subject Matter Jurisdiction made by Defendant National General Insurance Company. (together, the "Motions"). The Court, having considered the Motions, the briefs in support of and in opposition to the Motions, and the arguments of counsel, concludes that the Motion to Dismiss for Lack of Subject Matter Jurisdiction should be DENIED, the Motions to Dismiss for Failure to State a Claim should be GRANTED, and the Amended Complaint should be DISMISSED.

*Long, Parker, Warren, Anderson, Payne & McClellan P.A., by Robert B. Long, Jr. and Steve R. Warren for Plaintiffs.*

*Jones Walker LLP, by Joseph L. Adams for Defendant RevClaims, LLC.*

*Roberts & Stevens P.A., by Phillip T. Jackson and Eric P. Edgerton for Defendant Mission Hospital, Inc.*

*Robinson, Bradshaw & Hinson P.A., by Robert W. Fuller and Mark A. Hiller for Defendant Mission Hospital, Inc.*

*Shumaker, Loop & Kendrick LLP, by Christian H. Staples, J. Bennett Crites, III, and Laura Johnson Evans for Defendant RevClaims, LLC.*

*Young Moore & Henderson P.A., by Glenn C. Raynor for Defendant National General Insurance Company.*

Gale, Judge.

## I.  PROCEDURAL HISTORY

2. Plaintiffs initiated this action on April 20, 2018, asserting claims of breach of contract, interference with contractual relations, and unfair or deceptive trade practices ("UDTP").  (Compl., ECF No. 3.)  Plaintiffs subsequently amended their complaint on May 30, 2018, to add a claim for conversion.  (Am. Compl. ¶¶ 45–47, ECF No. 16.)  Plaintiffs seek to represent a purported class of similarly situation persons.  (Am. Compl. ¶¶ 48–57.)

3.  On July 2, 2018, defendant Mission Hospital, Inc. ("Mission") filed a motion to dismiss under N.C. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim upon which relief can be granted.  (ECF No. 21.)  On July 13, 2018, defendant RevClaims, LLC ("RevClaims") likewise moved to dismiss under Rule 12(b)(6).  (ECF No. 27.)  On August 8, 2018, defendant National General Insurance Company ("National General") moved to dismiss, first under N.C. R. Civ. P.

12(b)(1) ("Rule 12(b)(1)") for lack of subject matter jurisdiction based on Plaintiffs having no "injury in fact" and second under Rule 12(b)(6) for failure to state a claim. (ECF No. 32.)

4. The motions have been fully briefed and argued, and they are now ripe for resolution.

## II. FACTUAL BACKGROUND

5. The Court does not make findings of fact but accepts the well-pled allegations of the Complaint as true.

6. Plaintiffs' various claims arise from their treatment at Mission following an automobile accident, in conjunction with which Plaintiffs or someone on their behalf executed forms which, in part, include the assignment of certain insurance benefits. The various claims arise from and depend upon the success of Plaintiffs' contention that the assignment did not reach the medical payments coverage provided by Plaintiffs' automobile policy. ("MedPay").

### A. The Accident and Hospital Visit

7. The three Plaintiffs are family members Randy and Cathy Justice and the infant Julyette Wilkerson who reside together in Buncombe County. (Am. Compl. ¶ 1.) Cathy Justice is Wilkerson's great aunt and legal guardian. (Am. Compl. ¶ 7.) Plaintiffs were involved in an automobile accident on January 4, 2017, (Am. Compl. ¶ 7), and were brought to Mission's Emergency Room that same evening, (Am. Compl. ¶¶ 8, 22, & 25.)

8. Mission is a North Carolina corporation operating a hospital in Asheville, North Carolina. (Am. Compl. ¶ 2.) National General is a Missouri corporation domiciled in Jefferson City, Missouri. (Am. Compl. ¶ 3.) RevClaims is a foreign corporation handling third party billing for Mission; its domicile is not established by the record. (Am. Compl. ¶ 4.)

9. Upon Plaintiffs' arrival, Mission requested that a "Consent to Treatment/Financial Agreement" form be executed for each Plaintiff. (Am. Compl. ¶¶ 10, 23, & 25.) Because Randy Justice was unable to execute the form, Mission recorded verbal consent in place of his signature, with a hospital employee as a witness. (Am. Compl. ¶ 8.) Cathy Justice signed her own form and one on behalf of Julyette Wilkerson as legal guardian. (Am. Compl. ¶¶ 22 & 25.) Plaintiffs do not challenge that the forms were signed; rather, they challenge their application and meaning.

10. Each consent form is identical and contains a clause labeled as "Assignment of Insurance Benefits" which states:

> I assign all **liability and health insurance benefits** for these services to the provider(s) and direct all insurance entities to furnish all information regarding my benefits, status of claim, reasons for non-payment, and other information deemed necessary for the collection of debt. I agree that I may be responsible for all charges incurred. ("Assignment of Benefits") (Am. Compl. at Ex. B, Randy Justice Consent to Treatment/Financial Agreement Form (emphasis added).)

11. Randy and Cathy Justice maintained an automobile insurance policy with National General that provided first-party medical payments coverage up to $1,000 per person and $1,000 per accident. (Am. Compl. ¶ 5.)

12. Mission prepared a registration form which included "Primary," "Secondary," and "Tertiary" insurance information for each Plaintiff. (Am. Compl. ¶ 8 and Am. Compl. at Ex. A & E, Registration Forms.) For Randy Justice, the primary insurance is listed as "Liability Pending," the secondary as "Humana ChoicePro Medicare," and the tertiary as "Medicare MCA." (Am. Compl. ¶ 8.) For Cathy Justice, the form reflects "Liability Pending" as the primary insurer, with no secondary and tertiary coverage indicated. (Am. Compl. at Ex. E, Cathy Justice Registration Form.) The record does not include a registration form for the minor Julyetta Wilkerson.

13. RevClaims conducts collection activities for Mission, and as an agent for Mission filed three notices with National General indicating that each of the three Plaintiffs "has a claim with your company and [RevClaims is] seeking recovery in connection with personal injuries." (Am. Compl. at Exs. C, G, J, RevClaims Submissions.) The notice continues, "[p]ursuant to N.C.G.S § 44-49, *et seq.*, RevClaims, LLC hereby gives notice of a lien…against any sums recovered as damages for personal injuries, whether in litigation or otherwise." ("RevClaims Submissions") (Am. Compl. at Exs. C, G, J, RevClaims Submissions.) A copy of the Financial Responsibility Form was included in each submission to National General by RevClaims. (Consent to Treatment/Financial Agreement Forms.)[1]

---

[1] The Court understands that a statutory lien would be limited to third-party insurance rather than first-party coverages. However, Mission's right to MedPay payments is based on the contractual Assignment of Benefits rather than a statutory lien.

14. Within two weeks, National General remitted three checks for $1,000, representing the limits of the MedPay coverage under its policy. (Am. Compl., ¶¶ 21, 24, & 26.) Plaintiffs contend that National General did so without first contacting them and that they learned of the payments when later seeking payment from National General themselves. (Am. Compl. ¶28.)

## B. **Plaintiffs' Claims**

15. Plaintiffs bring separate distinct claims against the Defendants, each based on the central contention that Plaintiffs had not assigned their claims to MedPay coverage to Mission. In their briefs, Plaintiffs admit that each of their claims fails if their Assignment of Benefits included their to payment under the MedPay provisions of the applicable insurance policies, but argue that each of their claims must avoid dismissal if either the scope of the Assignment of Benefits is ambiguous or if, as a matter of clear contract construction, the Assignment of Benefits does not extend to payments pursuant to Plaintiffs' MedPay coverage. (*See* Pls.'s Resp. Br. Opp'n Mission Hospital, Inc. and RevClaims Mots. Dismiss 3–4, ECF No. 36 "Pls.'s Resp. Mi. Hosp. and RevClaims".)

16. The Court details each of the separate claims below.

### 1. **Claims Against Mission**

17. Plaintiffs assert interference with contractual relations, conversion, and UDTP claims against Mission. (Am. Compl. ¶¶ 35, 40, & 46.)

18. The UDTP claim is grounded on the contention that Mission has a practice of having patients sign financial consent forms which are then presented

to insurance companies to collect monies to which Mission has no legitimate claim. (Am. Compl. ¶ 35.) The claim rests on the assertion that MedPay coverage is not a "liability or health insurance" benefit within the meaning of the Assignment of Benefits.

19. Anticipating a defense based on the learned profession exception to their UDTP claim, Plaintiffs allege that Mission's billing practices are not related to providing medical care but to "the entrepreneurial aspects of operating the hospital for its own interests, as opposed to the interests of their patients and other health care providers." (Am. Compl. ¶ 35.)

20. Based on their position that the MedPay coverage falls outside the Assignment of Benefits clause, Plaintiffs contend that Mission intentionally induced National General to breach its contractual obligations to pay MedPay benefits directly to Plaintiffs, (Am. Compl. ¶ 42), and then converted the MedPay payments, (Am. Compl. ¶ 46.)

## 2. Claims Against RevClaims

21. Plaintiffs' claims against RevClaims essentially repeat claims against Mission based on RevClaims having acted as Mission's agent. (Am. Compl. ¶ 35.)

22. Plaintiffs do not allege a separate basis for RevClaims' liability if Mission is not found liable as its principal.

### 3. Claims Against National General

23. Plaintiffs claim National General breached its contract with Plaintiffs by making MedPay payments to Mission in response to RevClaims' collection efforts. (Am. Compl. ¶¶ 34–38.)

24. In addition to their assertion that the Assignment of Benefits did not extend to MedPay coverage, Plaintiffs further contend that any assignment was prohibited by the provision of the National General policy which provides that *"[y]our rights and duties under this policy may not be assigned without our written consent."* (Am. Compl. ¶ 30 (emphasis added).)

25. Plaintiffs claim that National General's breach of contract was accompanied by the aggravating circumstances of National General's (1) failure to contact the Plaintiffs before paying the benefit and (2) failing to properly investigate Mission's authority to submit a claim, thereby constituting both a UDTP and an illegal claims practice. (Am. Compl. ¶ 28.)

### III. STANDARD OF REVIEW

26. A Rule 12(b)(6) motion should be granted only where "the face of the complaint discloses some insurmountable bar to recovery." *Anderson v. Seascape at Holden Plantation, LLC*, 241 N.C. App. 191, 200, 773 S.E.2d 78, 85 (2015)(quoting *Meadows v. Iredell County*, 187 N.C. App. 785, 787, 653 S.E.2d 925, 927 (2007)). The Court treats the allegations as true to determine if they are a sufficient basis for liability under some legal theory. *See Silver v. Halifax County Board of Comm'rs*, 805 S.E.2d 320, 323 (N.C. Ct. App. 2017). "The complaint must

be construed liberally, and the court should not dismiss the complaint unless it appears that the plaintiffs could not prove any set of facts in support of their claim which would entitle [plaintiff] to relief." *Lynn v. Overlook Dev.*, 328 N.C. 689, 692, 403 S.E.2d 469, 471 (1991). However, a claim is properly dismissed pursuant to Rule 12(b)(6) either (1) when the pleadings on their face reveal no law supports the claim, (2) when the complaint reveals the absence of a fact sufficient to make a good claim, or (3) when some fact in the complaint necessarily defeats plaintiff's claim. *See Johnson v. Bollinger*, 86 N.C. App. 1, 4, 356 S.E.2d 378, 380 (1987).

27. Similar to a Rule 12(b)(6) motion, when considering a Rule 12(b)(1) motion based solely on the pleadings, the Court views the allegations of the complaint as true and reads them in the light most favorable to the non-moving party. *See Mangum v. Raleigh Board of Adjustment*, 362 N.C. 640, 644, 669 S.E.2d 279, 283 (2008). The courts are intended to be open to those who suffer harm and so as a general rule those who can demonstrate an injury have standing. *Id.* at 642, 669 S.E.2d at 281. "It is not necessary that a party demonstrate that injury has already occurred, but a showing of immediate or threatened injury will suffice for the purposes of standing." *Id.* at 642–43, 669 S.E.2d at 282.

## IV.    ANALYSIS

### A.  Plaintiffs Have Standing to Assert a Claim Against National General

28. To satisfy the standing requirement, "a plaintiff must show: (1) injury in fact, or injury that is concrete and particularized, and actual or imminent; (2) causation between the challenged action of the defendant and the injury; and (3)

the likelihood that the injury will be redressed by a favorable decision." *See Lee Ray Bergman Real Estate Rentals v. N.C. Fair Housing Center,* 153 N.C. App. 176, 179, 568 S.E.2d 883, 886 (2002).

29.     National General contends that Plaintiffs have shown no injury in fact because Plaintiffs do not contest that they are liable to Mission for hospital services they received.  Thus, since the MedPay payments National General made to Mission reduced Plaintiffs' total debt to Mission, "[t]here is therefore no net economic benefit to an insured," and it makes no difference if the monies are paid directly to the Plaintiffs or indirectly on their behalf.  (Br. Supp. NGI Mot. Dismiss 5–6, ECF No.  32.)

30.     Plaintiffs contend that, even if they may be ultimately liable to Mission, they, not National General, had the right to determine when and how payment would be made to Mission, and that National General has no right to make that determination.

31.      Plaintiffs claim a contractual right as to how they will utilize the benefits of their first-party coverage.  The Court concludes that Plaintiffs' claim might support an injury-in-fact adequate to construe standing if the right to the MedPay coverage had not been assigned.  *See Pierson v. Buyher*, 330 N.C. 182, 186, 409 S.E.2d 903, 905 (1991)("[i]t is sufficient if nominal damages are recoverable for the breach or for the wrong, and it is unimportant that the actual or substantial damage is not discovered or does not occur until later."); *see also Hamm v. Blue Cross & Blue Shield of N.C.*, 2010 NCBC LEXIS 17, at \*11 (N.C.

Super. Ct. Aug. 27, 2010)("[a] breach of contract, even if negligible, constitutes injury.").

32.     However, the Court need not consider such possibility further because, as described below, the Court concludes, as a matter of law and based solely on Plaintiffs' complaint, that any right to MedPay coverage had been assigned to Mission.

33.     Accordingly, the Court concludes that Plaintiffs have alleged an injury-in-fact adequate to support the Court's consideration of the merits of their claims so that National General's Rule 12(b)(1) Motion should be denied.  The Court therefore proceeds with its consideration of Plaintiffs' claims on their merits.

B. **Plaintiffs' Own Pleadings Demonstrate That Benefits Under Their MedPay Coverage Was Assigned to Mission**

34.     Plaintiffs' briefs in opposition to the motions posit that there are three potential outcomes in interpreting the relevant contracts, with Plaintiffs' claims surviving dismissal only under two of the three outcomes.  (*See* Pls.'s Resp. Mi. Hosp. and RevClaims at 3–4.)  That is, if the Assignment of Benefits clearly assigns benefits under the MedPay coverage, Plaintiffs' claims fail.  (*See* Pls.'s Resp. Mi. Hosp. and RevClaims at 3–4.)  However, if the scope of the assignment is ambiguous or the assignment clearly does not assign those benefits, then Plaintiffs' claims against each Defendant proceeds.  (*See* Pls.'s Resp. Mi. Hosp. and RevClaims at 3–4.)  Plaintiffs' three potential outcomes depend upon the construction of the term "liability or health insurance" as used in the Assignment of Benefits.  (*See* Pls.'s Resp. Mi. Hosp. and RevClaims at 3–4.)

35. After a full consideration, the Court concludes that the Assignment of Benefits unambiguously assigns payments under Plaintiffs' MedPay coverage to Mission, and accordingly Plaintiffs' claims fail based on Plaintiffs' own allegations.

36. Whether a contract is ambiguous is a question of law. *See Morell v. Hardin Creek, Inc.*, 821 S.E.2d 360, 365 (2018). Where language is unambiguous, it is the job of the courts to give it effect. *See Runyon v. Paley*, 331 N.C. 293, 305, 416 S.E.2d 177, 186 (1992). An ambiguity "exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695, 599 S.E.2d 549, 553 (2004).

37. Benefits under Plaintiffs' MedPay coverage were assigned if those benefits were either a "liability insurance" or a "health insurance" benefit. Plaintiffs contend that the effect of the language is unambiguous. Defendants contend the effect is clear and in their favor.

38. Defendant Mission argues that the Court can rest its finding of an assignment on either of two pathways: first that the MedPay benefits were "liability insurance" because the coverage was provided by an automobile insurance policy, or second, because the MedPay coverage was "health insurance." (*See* Br. Supp. Mi. Hosp. Mot. Dismiss 7–8, ECF No. 22.) Mission prefers its first position. (*See* Br. Supp. Mi. Hosp. Mot. Dismiss at 8.) The Court does not accept Mission's first basis, as there is some potential ambiguity whether the term "liability insurance" should be read to be limited to third-party coverage and first-

party MedPay coverage does not become "liability insurance" just because the coverage is part of an automobile liability insurance policy.

39.     Plaintiffs argue that their assignment of "liability insurance" must be limited to those coverages which are mandatory for a statutory minimum limits policy as required by N.C. Gen. Stat. § 20-279.21. *Nationwide Mutual Ins. Co. v. Chantos,* 293 N.C.  431, 439, 238 S.E.2d 597, 603 (1977)("The mandatory coverage required by the Financial Responsibility Act….does not require the insurer to extend medical payment coverage beyond the terms of the policy to one who receives liability coverage solely by virtue of the Act."). MedPay coverage is not mandatory. *See* N.C. Gen. Stat. § 20-279.21(g).

40.     While MedPay coverage is not statutorily mandated, it does not follow that optional coverage contained within an automobile liability policy cannot be "liability insurance." Plaintiffs' construction would, for example, require the Court to conclude that third-party liability coverage or uninsured motorist coverage at limits beyond the minimum statutory prescribed limits cannot be considered "liability insurance." That construction fails the test of common sense.

41.     But rejecting Plaintiffs' primary argument as to whether MedPay is "liability insurance" also does not mandate that the Court agree with Mission's contention that MedPay is included with the Assignment of Benefits simply because it is provided by an automobile liability policy. MedPay coverage is first-party coverage where one seeks to provide coverage for injury irrespective of fault and liability. MedPay coverage may be contained in an automobile liability policy,

but payments pursuant to the coverage do not depend upon any finding of liability. The Court concludes that it is ambiguous whether there the term "liability insurance" as it is used in the Assignment of Benefits includes MedPay coverage. The Court need not resolve that ambiguity, because it concludes that MedPay coverage is clearly and unambiguously "health insurance" within the scope of the Assignment of Benefits.

42.     Plaintiffs seek to limit the term "health insurance" as used in the Assignment of Benefits section to the definition of the term "health benefit plan" in various North Carolina statutes.  The two terms, however, do not equate.  The Court again concludes that Plaintiffs present a statutory argument that goes too far.

43.     N.C. Gen. Stat. § 58-3-225[2] provides:

As used in this section:...(2) "Health benefit plan" means an accident and health insurance policy or certificate; a nonprofit hospital or medical service corporation contract; a health maintenance organization subscriber contract; a plan provided by a multiple employer welfare arrangement; or a plan provided by another benefit arrangement, to the extent permitted by the Employee Retirement Income Security Act of 1974, as amended, or by any waiver of or other exception to that act provided under federal law or regulation. "Health benefit plan" does not mean any plan implemented or administered by the North Carolina or United States Department of Health and Human Services, or any successor agency, or its representatives. *"Health benefit plan" also does not mean any of the following kinds of insurance:...(g) Medical payments under motor vehicle or homeowners' insurance policies."* N.C. Gen. Stat. § 58-3-225. (emphasis added)

---

[2] Plaintiffs incorrectly cite to N.C.  Gen.  Stat.  § 58-3-25(2), but it is clear that they rely on N.C.  Gen.  Stat.  § 58-3-225.

44. This or a substantially similar definition is used throughout the insurance statutes. *E.g.,* N.C. Gen. Stat. §§ 58-3-167; 58-50-61; 58-3-169; and 58-3-174.

45. By its express terms, the statute excludes MedPay coverage from the definition of a health benefit plan. Plaintiffs jump to the conclusion that MedPay coverage cannot be considered "health insurance." But the statute clearly acknowledges that there are other forms of health insurance, such as Medicaid, Medicare, and the Children's Health Insurance Program administered by the North Carolina Department of Health and Human Services, that are excluded from the definition of "health benefit plan." Payments under such plans are recognized by North Carolina courts as "health insurance benefits." *See, e.g., Lake v. State Health Plan for Teachers & State Emps.*, 234 N.C. App. 368, 369, 760 S.E.2d 268, 270 (2014) (Plaintiffs "…were eligible upon retirement to receive these health insurance benefits from the State Health Plan…" referring to N.C. Gen. Stat. § 58-3-167).

46. The Court concludes that the relevant statutes and decisions make it clear that the terms "health benefit plan" and "health insurance benefits" are not synonymous, and the Court further concludes that the language of the Assignment of Benefits clause clearly assigns MedPay coverage as "health insurance" within the scope of the Assignment of Benefits at issue.

47. It follows that all claims in Plaintiffs' Amended Complaint must be dismissed, unless somehow the assignment was invalid.

## C. **The Anti-Assignment Provision of the National General Policy Did Not Preclude Plaintiffs' Assignment to Mission**

48.     The Court now considers Plaintiffs' argument that National General's policy language precludes Plaintiffs from assigning their interest.

49.     To this Court's knowledge, no North Carolina court has yet been required to address the assignment issue in the context of MedPay coverage.  The general rule is that provisions "prohibiting assignment are for the benefit of the insurer, only the insurer may complain that the assignment is in violation of the prohibitory clause, and if the insurer refuses to do so, the insured cannot attack his or her own assignment on these grounds." *Couch on Insurance* §35:5 (3d. ed. 2009).  Moreover, "[t]he great majority of courts adhere to the rule that general stipulations in policies prohibiting assignments of the policy, except with the consent of the insurer, apply only to assignments before loss, and do not prevent an assignment after loss…" this is because "[t]he purpose of a no assignment clause is to protect the insurer from increased liability, and after events giving rise to the insurer's liability have occurred, the insurer's risk cannot be increased…" *Couch, supra,* at § 35:8.

50.     The Court concludes that Plaintiffs were free to assign the benefits payable under their MedPay coverage to Mission.

## D. **The Court Need Not Address Plaintiffs' Additional Claims in Light of the Valid Assignment of MedPay Benefits to Mission**

51.     Plaintiffs present other claims that depend on a finding that Plaintiffs did not assign their MedPay benefits to Mission.  Those claims must be dismissed

because they depend upon a finding in Plaintiffs' favor that the Court concludes is precluded by the unambiguous terms of the Assignment of Benefits. And because Plaintiffs' primary UDTP claim fails, the Court likewise need not consider whether Mission would be entitled to a defense under the learned profession exception to N.C. Gen. Stat. §75-1.1 or whether a single payment by National General constitutes an unfair claim practice under N.C. Gen. Stat. § 58-63-15.

## V. CONCLUSION

52. For the foregoing reasons:

a. National General's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED;

b. Defendants' various Motions to Dismiss for Failure to State a Claim are GRANTED;

c. Plaintiffs' Amended Complaint is DISMISSED WITH PREJUDICE; and.

d. Each Party shall bear its own costs.

IT IS SO ORDERED this 27th day of March, 2019.

/s/ James L. Gale

James L. Gale
Senior Business Court Judge