IN THE SUPREME COURT OF NORTH CAROLINA

No. 90A22

Filed 28 April 2023

MICHAEL R. GALLOWAY, as Trustee of the MELISSA GALLOWAY SNELL
LIVING TRUST DATED May 1, 2018, and as the Personal Representative of the
ESTATE OF MELISSA GALLOWAY SNELL

v.

JEFFREY SNELL

Appeal pursuant to N.C.G.S. § 7A-30(2) from the decision of a divided panel of the Court of Appeals, 282 N.C. App. 239 (2022), reversing an order entered on 19 August 2020 by Judge A. Graham Shirley II in Superior Court, Wake County, and remanding to the trial court for further proceedings. Heard in the Supreme Court on 15 March 2023.

*Gregory S. Connor for plaintiff-appellant.*

*Smith Debnam Narron Drake Saintsing & Myers, LLP, by Bettie Kelley Sousa and Alicia Jurney, for defendant-appellee.*

BARRINGER, Justice.

In this matter, we review the Court of Appeals' determination that provisions in a settlement agreement are ambiguous. Having reviewed the plain language of the settlement agreement and having determined it to be unambiguous, we conclude that the Court of Appeals erred.

## I.    Background

Defendant Jeffrey Snell and Melissa Galloway Snell (Melissa) married in

March 2000 but subsequently separated in August 2017. Thereafter, on 8 February 2018, defendant and Melissa executed a Memorandum of Mediated Settlement Agreement (Settlement Agreement). On 28 December 2018, a judgment of divorce was granted to defendant and Melissa in District Court, Wake County. A few months later, Melissa passed away. At the time of her death, the life insurance policy on Melissa's life (Policy) listed the Melissa Galloway Snell Living Trust (Trust), dated 1 May 2018, as the Policy's beneficiary. Defendant and Melissa had four children, who are the beneficiaries of the Trust.

Defendant on his own and through counsel asserted that the proceeds from Melissa's Policy should be paid to defendant. As a result, the trustee of the Trust, plaintiff Michael Galloway, sued and sought a declaratory judgment that the Settlement Agreement permitted Melissa to lawfully name the Trust as the beneficiary of her Policy binding defendant.[1] Defendant asserted a counterclaim, seeking a declaration that the Settlement Agreement required payment of the death benefits from Melissa's Policy to defendant.

Plaintiff and defendant both moved for summary judgment on the declaratory judgment claim. The trial court concluded that the Settlement Agreement was not ambiguous and there was no genuine issue of material fact precluding the granting of summary judgment on plaintiff's declaratory judgment claim. The trial court

---

[1] Plaintiff in his capacity as the personal representative of Melissa's estate also asserted a breach of contract claim. However, as this claim is not relevant to the appeal, we do not discuss it further in this opinion.

granted plaintiff's motion for summary judgment as to his declaratory judgment claim and declared as follows:

> I.   The Settlement Agreement, subject to II below, required [Melissa Galloway] Snell to maintain life insurance naming [Defendant] the beneficiary with a death benefit of at least $1 Million until she no longer had an obligation to pay for college expenses;
>
> II.   The Settlement Agreement permitted Melissa Galloway Snell to change the beneficiary on insurance she owned to the children's trust in lieu of having the Defendant named as beneficiary, including changing the beneficiary on the two life insurance policies in which Defendant was named as the beneficiary, with death benefits totaling $1,000,000.00, to the Melissa Galloway Snell Living Trust as beneficiary;
>
> III. That the Melissa Galloway Living Trust dated May 1, 2018 is the proper sole beneficiary of all of the life insurance policies owned by Melissa Galloway Snell at her death.

The trial court denied defendant's motion for summary judgment.

Thereafter, defendant appealed the trial court's order granting plaintiff's summary judgment motion and denying defendant's summary judgment motion as to the declaratory judgment claim to the Court of Appeals. A divided panel of the Court of Appeals concluded that the relevant language of the Settlement Agreement was ambiguous. *Galloway v. Snell*, 282 N.C. App. 239, 240 (2022). Thus, it reversed the trial court's order and remanded for further proceedings. *Id.* In contrast, the dissent concluded that the relevant language of the Settlement Agreement was unambiguous. *Id.* at 251 (Hampson, J., dissenting). The dissent took the position that

the trial court properly granted summary judgment in favor of plaintiff. *Id.* at 253.

Plaintiff appealed to this Court based on the dissent.

## II.    Standard of Review

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573 (2008) (cleaned up).

## III.    Analysis

Written contracts "are to be construed and enforced according to their terms." *Gould Morris Elec. Co. v. Atl. Fire Ins. Co.*, 229 N.C. 518, 520 (1948). They "must receive a reasonable interpretation, according to the intention of the parties at the time of executing them, gathered from the language employed by them." *Lane v. Scarborough*, 284 N.C. 407, 411 (1973) (cleaned up). "When the language of a contract is clear and unambiguous, effect must be given to its terms," *Weyerhaeuser Co. v. Carolina Power & Light Co.*, 257 N.C. 717, 719 (1962), and "its terms may not be contradicted by parol or extrinsic evidence," *Root v. Allstate Ins. Co.*, 272 N.C. 580, 587 (1968).

Further, a contract's meaning and effect is a question of law for the court—not the jury—when the language of the contract is clear and unambiguous. *Lowe v. Jackson*, 263 N.C. 634, 636 (1965) ("It is well settled that where the language of a contract is plain and unambiguous, it is for the court and not the jury to declare its

meaning and effect."); *Lane*, 284 N.C. at 410 ("When a contract is in writing and free from any ambiguity which would require resort to extrinsic evidence, or the consideration of disputed fact, the intention of the parties is a question of law."). And "[t]he terms of an unambiguous contract are to be taken and understood in their plain, ordinary and popular sense," *Weyerhaeuser*, 257 N.C. at 719–20, and "harmoniously construed" to give "every word and every provision" effect, *Singleton v. Haywood Elec. Membership Corp.*, 357 N.C. 623, 629 (2003) (quoting *Gaston Cnty. Dyeing Mach. Co. v. Northfield Ins. Co.*, 351 N.C. 293, 299 (2000)).

"An ambiguity exists in a contract when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register v. White*, 358 N.C. 691, 695 (2004). "An ambiguity can exist when, even though the words themselves appear clear, the specific facts of the case create more than one reasonable interpretation of the contractual provisions." *Id*. If a written contract is ambiguous, the contract's meaning and effect is a factual question for the jury and parol evidence may be introduced "not to contradict, but to show and make certain what was the real agreement between the parties." *Root*, 272 N.C. at 590 (quoting *Hite v. Aydlett*, 192 N.C. 166, 170 (1926)).

Given this well-established law concerning contract construction, we turn to the written contract, the Settlement Agreement, and its terms. The Settlement Agreement, as pertinent, provides as follows:

Snell Mediated Settlement Agreement

Equitable Distribution

. . . .

- Non-ED Assets/Children's Assets:

  . . . .

  - The children's life insurance policies shall be kept intact. [Defendant] will be responsible for 90% of the premiums and Melissa shall be responsible for 10% of the premiums until the child is gainfully employed. The beneficiary shall be the children's trust (see details about trust below)

Custody- see the consent order for custody

Support- Child and Spousal

. . . .

- As long as [defendant] has support obligation[s] or is obligated to pay for children's college as outlined below, he shall maintain a life insurance policy naming Melissa is [sic] as the beneficiary with a death benefit of $2 Million.
- Until Melissa no longer has an obligation to pay for college expenses, she shall maintain a life insurance policy naming [defendant] the beneficiary with a death benefit of at least $1 Million. [Defendant] at his election may maintain (as owner) at his sole expense [words lined through] life insurance policy on Melissa's life totaling $1,000,000 in death benefit.
- Additional term: the parties currently have a health insurance policy with a deductible of $10K. Prior to Melissa's flu and hospitalization, Melissa had paid almost $1K. [Defendant] shall pay as non-taxable support the sum of up to $9,000.00 in the form of payments directly to medical providers as the bills come due for the 2018 policy term.
- Children's trust- each party shall, within 90 days, set up a trust for the benefit of the minor children so that the children can receive any insurance proceeds in lieu of the other party being named the beneficiary. [Defendant's] brother shall be named as trustee of the children's trust established by

[defendant], and Melissa's brother shall be named as trustee of the children's trust established by Melissa.

. . . .

College

- Each party shall contribute .05% percent of his/her annual gross income (per two years' ago tax return) per child to the children's 529 accounts. By way of example, each party's obligation for the 2018 year shall be calculated using each party's AGI for 2016. This can be contributed annually or monthly, but in any case the full amount for each child's 529 shall be put into the proper account no later than April 15 for that year.
- In the event that any child's 529 account does not cover the costs for the child to attend college, each party shall be responsible as follows: Melissa 10%, [defendant] 90%. Each party's total obligation shall be limited to the cost for in-state tuition, books, fees, etc. at UNC-Chapel Hill, for up to 8 semesters per child.

Before the Court of Appeals, plaintiff argued that the Settlement Agreement "unambiguously provides that once a party sets up a trust for the benefit of the children, the party could change the beneficiary of any insurance policy such that 'the children can receive any insurance proceeds in lieu of the other party being named the beneficiary.'" *Galloway*, 282 N.C. App. at 249 (majority opinion). In contrast, defendant argued that the Settlement Agreement "unambiguously required Melissa to 'maintain a life insurance policy naming [defendant] the beneficiary with a death benefit of at least $1 Million' until 'Melissa no longer had an obligation to pay for college expenses,' and the children's trust was to be the beneficiary of proceeds from

other policies—including each of the children's life insurance policies." *Id.* In the alternative, defendant argued the Settlement Agreement is ambiguous. *Id.* The Court of Appeals held that the Settlement Agreement is ambiguous. *Id.* at 250. The dissent disagreed, *id.* at 251 (Hampson, J., dissenting), and plaintiff appealed based on the dissent.

Like the dissent, we disagree with the holding of the Court of Appeals as a matter of law. The Settlement Agreement is unambiguous as to the controversy before this Court. When the Settlement Agreement is read as a whole and the language of the Settlement Agreement is accorded its plain and ordinary meaning, "the intent of the parties at the moment of its execution emerges clearly." *Preyer v. Parker*, 257 N.C. 440, 445 (1962). "Until Melissa no longer has an obligation to pay for college expenses, she shall maintain a life insurance policy naming [defendant] the beneficiary with a death benefit of at least $1 Million," provided that after setting up a trust for the benefit of the minor children, such trust for "the children can receive *any* insurance proceeds in lieu of the other party being named the beneficiary." (Emphasis added).

The foregoing statements are in bullet points under the subheading "Support-Child and Spousal" and are the only statements under the subheading "Support-Child and Spousal" that address insurance policies where the other party is named the beneficiary. Further, the trust for the benefit of the minor children is for "*any* insurance proceeds in lieu of the other party being named the beneficiary." (Emphasis

added). We must apply the plain and ordinary meaning to the terms of the Settlement Agreement, including to the word "any," *see Weyerhaeuser*, 257 N.C. at 719–20, and must construe the Settlement Agreement to give every word and every provision effect, *Singleton*, 357 N.C. at 629.

When used as a determiner, like in the Settlement Agreement, the word "any" is "used to refer to one or some of a thing or number of things, no matter how much or many" and "whichever of a specified class might be chosen." *Any*, *New Oxford American Dictionary* (3rd ed. 2010); *see also Any*, *The American Heritage Dictionary* (5th ed. 2018) (defining "any" as "[o]ne, some, every, or all without specification"). Defendant's interpretation would not give the term "any" its plain and ordinary meaning, and it would not give effect to the language "the children can receive any insurance proceeds in lieu of the other party being named the beneficiary." Rather, defendant's interpretation would require us to read into the Settlement Agreement limiting language to the word any that is not there, which is contrary to the requirement that a "contract must be construed to mean what on its face it purports to mean." *Hagler v. Hagler*, 319 N.C. 287, 294 (1987) (quoting *Hartford Accident & Indem. Co. v. Hood*, 226 N.C. 706, 710 (1946)).

We hold that the Settlement Agreement as it relates to this controversy is unambiguous because neither "the meaning of words [n]or the effect of provisions is uncertain or capable of several reasonable interpretations." *Register*, 358 N.C. at 695. Given the lack of ambiguity, construction is a question of law for the court. We agree

with the Court of Appeals' dissent that the construction as a matter of law is as the trial court construed it—"Melissa was permitted to name the [T]rust she set up for the benefit of the children as the beneficiary of the insurance policies she maintained to secure her college expense obligations." *Galloway*, 282 N.C. App. at 253 (Hampson, J., dissenting). Thus, the Court of Appeals should have affirmed the trial court's order granting summary judgment in plaintiff's favor on the declaratory judgment claim.

## IV.    Conclusion

Having reviewed the plain language of the Settlement Agreement, we conclude that the Court of Appeals erred by holding that the Settlement Agreement is ambiguous. Accordingly, we reverse the Court of Appeals' decision.

REVERSED.